Opinion issued August 21, 2025



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-23-00618-CV

————————————

**GREAT VALUE STORAGE LLC AND WORLD CLASS CAPITAL GROUP, LLC, Appellants**

**V.**

**PRINCETON CAPITAL  CORPORATION, Appellee**

---

**On Appeal from the 165th District Court
Harris County, Texas
Trial Court Case No. 2019-18855**

---

## MEMORANDUM OPINION

In the post-judgment posture of this lawsuit, the trial court appointed a receiver to collect a judgment against two limited liability companies for failure to pay a debt. The judgment creditor on whose behalf the receiver had been appointed entered into a settlement agreement with third-party affiliates of the

judgment debtors, resulting in payment in full to the creditor. The receiver sought a fee award based on the settlement, and the trial court granted that request. The judgment debtors challenge that fee award on appeal.

Additionally, in his effort to collect assets to satisfy the judgment, the receiver seized assets of other third-party affiliates of the judgment debtors. Those third-party affiliates later sought to intervene in this lawsuit, claiming the receiver had no authority to seize their property as strangers to the judgment. The trial court "denied and dismissed" the pleas in intervention without notice or a setting. These intervenors challenge that denial and dismissal on appeal.

We conclude the trial court abused its discretion in awarding the receiver fees and abused its discretion and committed a due-process violation by denying and dismissing the pleas in intervention without notice. Accordingly, we reverse and remand for further proceedings.

## I.    Background

Natin "Nate" Paul is a real-estate investor who does business through a network of entities. According to the receiver's report to the trial court, Paul's network of entities consists of "hundreds of corporate shells" that Paul "deliberately created" to be "an opaque, complex, and largely undocumented web" for the purpose of "passing money among them without documentation, corporate formalities, or legitimate purpose." The receiver characterizes Paul's network of

2

companies as a "coast-to-coast conspiracy designed to defraud creditors and investors."

Paul is not a party to this appeal. However, he is the sole member and manager of Appellant World Class Capital Group, LLC ("WCCG"). WCCG, in turn, is the sole member and manager of Appellant Great Value Storage LLC ("Great Value"). WCCG and Great Value were named as defendants in this case, but no other Paul-related entity was named as a party.

## A. The judgment against WCCG and Great Value

WCCG and Great Value owed money to Princeton Capital Corporation ("Princeton") under two promissory notes and a related Note Purchase Agreement ("NPA"). Paul signed the NPA on behalf of both WCCG and Great Value. In 2018, after the debt had been restructured and Great Value nevertheless failed to make multiple interest payments that had become due, Princeton issued a default notice to Great Value and WCCG. When they failed to cure the default, Princeton filed this suit against Great Value, WCCG, and Paul for the full amount of the debt, alleging breach of contract and other claims. At the time, the debt totaled approximately $7.1 million and was accruing interest.

In 2021, the trial court granted summary judgment on Princeton's breach-of-contract claim, awarding Princeton $9.8 million plus attorney's fees and costs. The trial court also severed all other claims into a separate cause, leaving WCCG and

3

Great Value as the only defendants and causing the judgment in Princeton's favor to become final.

## B. The trial court's appointment of a receiver

With its final judgment in hand, Princeton moved under the Texas Turnover Statute for the appointment of Seth Kretzer as a receiver to assist with collecting the monies owed. *See* TEX. CIV. PRAC. & REM. CODE § 31.002. The trial court granted the motion and entered an order appointing Kretzer as receiver ("Receivership Order").

The Receivership Order gave Kretzer broad powers to assist Princeton with collection of the judgment. After defining Great Value and WCCG as the "Judgment Debtors," it directed them "to identify and turn over to the receiver all interests of the Judgment Debtors in any business or venture, including limited liability companies or limited partnerships." The Receivership Order also empowered Kretzer to:

- "take possession of and sell all leviable property of Judgment Debtors, including but not limited to . . . all financial accounts (bank account), certificates of deposit, money-market accounts, accounts held by any third party, . . . [and] causes of action or choses of action";

- "seize the membership interest of any Limited Liability Company in which [Great Value] or [WCCG] is a member, and to sell, manage, and operate the Limited Liability Company as the Receiver shall think appropriate"; and

4

- "obtain all bank accounts and records and invest accounts [sic] and records held by [Great Value] or [WCCG] from any financial institution."

The Receivership Order also contained a provision governing Kretzer's fees and expenses: "The Receiver's fee is twenty-five percent (25%) of all gross proceeds coming into his possession, not to exceed twenty-five percent of the balance due on the judgment, plus any out-of-pocket expenses incurred by the Receiver in his scope as a receiver in this case. . . . All Receiver's fees will be taxed as costs against the Debtor, which means that the Receiver is authorized to seek and recover 125% of the judgment plus expenses."

WCCG and Great Value appealed both the breach-of-contract judgment and the Receivership Order to this Court. *See Great Value Storage, LLC v. Princeton Cap. Corp.*, No. 01-21-00284-CV, 2023 WL 3010773 (Tex. App.—Houston [1st Dist.] Apr. 20, 2023, pet. granted, judgm't vacated w.r.m.) (mem. op.). We affirmed. *Id.* But as we explain below, the Supreme Court of Texas vacated our opinion and dismissed the appeal as moot. *See* Judgm't, No. 23-0722 (Tex. Mar. 8, 2024).

## C. Kretzer's actions as receiver

Once appointed as receiver, and while the appeal of the Receivership Order was pending before us, Kretzer began taking steps to collect the judgment. Relevant here, Kretzer seized assets owned by ten affiliates of WCCG and Great

5

Value (collectively, "the Intervenors"). Specifically, he seized real-estate interests held by two of the Intervenors ("Property Intervenors") and funds from bank accounts owned by the other eight Intervenors ("Bank Account Intervenors"). None of the Intervenors was named as a defendant in, or otherwise made a party to, the underlying part of this lawsuit that Princeton brought against WCCG and Great Value, and none of them was named as a judgment debtor in the trial court's judgment against WCCG and Great Value.

### 1. Kretzer's seizure of the Property Intervenors' real-estate interests

The Property Intervenors are two limited partnerships called WC 4th and Rio Grande, LP ("Rio Grande") and WC 4th and Colorado, LP ("Colorado"). Rio Grande and Colorado are Paul-created and -controlled affiliates of WCCG and Great Value, and WCCG appears to be the ultimate corporate parent of both of them (albeit with multiple layers of entities between them).

### a. Kretzer's seizure of Colorado's assets

Colorado owned real property in downtown Austin. The holder of the note on the property, an entity called Colorado Third Street, LLC ("CTS"), sued Colorado in Travis County district court to collect on its note, and Colorado counterclaimed against CTS ("the CTS Case"). In his capacity as receiver, Kretzer filed a notice of appearance in the CTS Case, saying he had replaced Colorado's prior counsel and was now counsel for Colorado. The lawyer that had been

6

representing Colorado objected and filed a motion to show authority, arguing that Kretzer "has never had any authority to act on behalf of [Colorado]."

On the same day he appeared in the CTS Case, Kretzer filed a joint motion with CTS, purportedly on Colorado's behalf, to release a $25,000 bond to CTS (not Princeton) that Colorado had paid into the registry of the court. The Travis County court granted that motion and released the funds to CTS.

Kretzer then settled the CTS Case on Colorado's behalf. He negotiated a resolution with CTS, though the terms of the settlement allegedly have never been disclosed to Colorado. Kretzer jointly moved with CTS for a dismissal with prejudice of all claims in the CTS Case. The trial court granted that motion, denied Colorado's motion to show authority, and dismissed all claims (including Colorado's counterclaims) with prejudice. Kretzer contends the CTS Case was a "frivolous delaying lawsuit[] filed by Paul" and that its dismissal "eas[ed] the burden on the Travis County District Courts."

Colorado appealed, and the appeal was transferred to the Fourteenth Court of Appeals under the Supreme Court of Texas's docket equalization authority. *See* TEX. GOV'T CODE § 73.001. The Fourteenth Court recently affirmed, concluding the trial court did not abuse its discretion in granting the Receiver's motion to dismiss. *See generally WC 4th and Colorado, L.P. v. Colorado Third Street, LLC*, No. 14-22-00764-CV, ____ S.W.3d ____, 2025 WL 1225841 (Tex. App.—

7

Houston [14th Dist.] Apr. 29, 2025, no pet. h.). That appeal is presently in the rehearing stage.

In addition to the CTS Case described above, CTS also filed a separate suit in Travis County district court against the guarantors of its note, WCCG and Paul ("the Guarantor Suit"). Colorado intervened in the Guarantor Suit. As he had done in the CTS Case, Kretzer filed a notice of appearance in the Guarantor Suit, again saying he was acting on Colorado's behalf and replacing its prior counsel. Kretzer also filed a motion saying he had agreed to settle Colorado's claims and asking for the release of almost $1 million held in trust to CTS (again, not to Princeton), which the trial court granted. Kretzer then moved to dismiss Colorado's claims in intervention. The trial court granted the motion, dismissed Colorado's claims with prejudice, and severed them from the remaining claims and parties.

Colorado appealed to the Third Court of Appeals, which reversed, concluding the trial court had abused its discretion in granting Kretzer's motions because he "exceeded his authority" in purporting to act on Colorado's behalf, in part because the Receivership Order did not grant him authority to do so. *See generally WC 4th and Rio Grande, LP v. Colorado Third Street, LLC*, No. 03-22-00781-CV, 2024 WL 3841676 (Tex. App.—Austin Aug. 15, 2024, pet. denied) (mem. op.). The Supreme Court of Texas denied CTS's petition for review.

8

### b. Kretzer's seizure of Rio Grande's assets

Like Colorado, Rio Grande also owned real property in downtown Austin. Rio Grande's property was subject to a note held by La Zona Rio, LLC ("La Zona"), which had threatened to foreclose. Rio Grande sued La Zona in Travis County district court in an effort to avoid foreclosure ("the La Zona Case").

Kretzer filed a notice of appearance in the La Zona Case, saying he was replacing Rio Grande's counsel. Rio Grande's counsel objected and filed a motion to show authority. Kretzer moved to dismiss Rio Grande's claims, saying the "parties ha[d] resolved all claims asserted in this case." The court granted the motion and entered a final order dismissing Rio Grande's claims with prejudice. Kretzer also executed and recorded a warranty deed transferring ownership of Rio Grande's property to La Zona.

Rio Grande appealed, and its appeal was transferred to the Eighth Court of Appeals. *See* TEX. GOV'T CODE § 73.001. The Eighth Court reversed, holding Kretzer had no authority to transfer Rio Grande's property, replace its counsel, or settle the La Zona Case. *WC 4th and Rio Grande, LP v. La Zona Rio, LLC*, No. 08-22-0073-CV, 2024 WL 1138568, at *17 (Tex. App.—El Paso Mar. 15, 2024, no pet.) (substitute mem. op.).[1] La Zona did not file a petition for review.

---

[1] The Eighth Court of Appeals also issued an opinion in an appeal arising out of a separate suit Rio Grande filed to quiet title to the property Kretzer transferred by warranty deed, concluding Kretzer lacked authority to take such actions. *See WC*

9

## 2.     Kretzer's seizure of the Bank Account Intervenors' assets

Kretzer also seized the Bank Account Intervenors' funds.   The Bank Account Intervenors are two limited partnerships and six limited liability companies.[2]  Like the Property Intervenors, each of the Bank Account Intervenors is a Paul-created entity with a relationship to WCCG and Great Value, in that WCCG appears to be their ultimate corporate parent (although with multiple layers of entities between them).   None of the Bank Account Intervenors was a party to the underlying litigation here or the judgment.

Kretzer seized or took control of at least $428,000 from the Bank Account Intervenors' accounts.   The Bank Account Intervenors contend they cannot determine the precise amount taken because their accounts have been frozen and cannot be accessed.

## D.     The Intervenors' attempts to intervene

The Intervenors filed pleas in intervention in this case, which they amended several times.  In their live pleas, Intervenors sought declaratory relief that certain of Kretzer's actions with respect to their assets were void, that portions of the Receivership Order itself were void as to the Intervenors, and that their rights had

---

*4th and Rio Grande, LP v. La Zona Rio, LLC*, No. 08-22-00225-CV, 2024 WL 1141075, at *1–2, *5 (Tex. App.—El Paso Mar. 15, 2024, no pet.) (mem. op.).

[2]   The Bank Account Intervenors are World Class Holdings, LLC; World Class Holding Company, LLC; WC 707 Cesar Chavez, LLC; WC Galleria Oaks Center, LLC; WC Parmer 93, LP; WC Paradise Cove Marina, LP; WC MRP Independence Center, LLC; and WC Subsidiary Services, LLC.

been violated. They also sought discovery regarding what assets Kretzer had seized and what he had done with those assets.

Kretzer filed a motion to strike the Intervenors' earlier pleas. He argued, among other things, that he was not subject to discovery under the doctrine of derived judicial immunity, that the Intervenors' claims were moot because the judgment had been satisfied, that the Intervenors would need permission from the Third, Eighth, and Fourteenth Courts of Appeals to intervene in this case, that the Intervenors were "controlled" by WCCG and Great Value, and that the Intervenors held fraudulently transferred funds. Kretzer did not set his motion to strike for a hearing or submission.[3] When the Intervenors subsequently amended their pleas, Kretzer did not move to strike their amended pleas.

After several months, the Bank Account Intervenors sent a letter to the trial court requesting an in-person status conference. The trial court did not set a status conference. Instead, as we explain below, without notice, the trial court entered an order that "denied and dismissed" "all pending pleas in intervention."

---

[3] The trial court did hold a hearing on a separate motion to compel filed by the Bank Account Intervenors, a part of their efforts to obtain discovery from Kretzer. Kretzer confirmed prior to the hearing that the only subject matter the hearing would cover was the motion to compel. Thus, it was not a hearing on his motion to strike. But at the hearing, the trial court made oral comments about "saying this [case] is resolved and shut[ting] it down." When the Bank Account Intervenors responded that doing so would "violate[] [their] due process rights," the trial court responded, "I understand, which the Court of Appeals could re-address." The trial court did not make any rulings at this hearing.

11

**E.      The settlement and payment of the judgment amount**

While Kretzer was proceeding after the Intervenors' assets, Princeton, the judgment creditor, was making its own independent efforts to collect the judgment. While the appeal of the trial court's judgment and Receivership Order was pending in our Court, several affiliates of WCCG and Great Value sought bankruptcy protection in the bankruptcy courts in Dallas and Austin.[4] Princeton filed proofs of claim in the Dallas Bankruptcy Case for the amount of the trial court's judgment. It also filed an adversary proceeding in the Dallas Bankruptcy Case to collect the amounts owed under the judgment, naming WCCG and Great Value (among other related entities) as defendants (collectively, "the Adversary Defendants"). *See Princeton Cap. Corp. v. GVS Texas Holdings I, LLC*, No. 22-03043 (Bankr. N.D. Tex. 2022) ("Adversary Proceeding").

Once the Adversary Proceeding was underway, the parties to it began settlement negotiations. They ultimately reached an agreement under which Princeton would be paid $11,372,698.89, or approximately 106 percent of the amount then due under the judgment ("Settlement Agreement").

To effect the settlement, Paul created a new entity called Phoenix Lending LLC ("Phoenix"). Under the terms of the Settlement Agreement, Phoenix would

---

[4]      *See In re GVS Texas Holdings I, LLC*, No. 21-31121-MVL (Bankr. N.D. Tex.) ("Dallas Bankruptcy Case"); *In re WC Culebra Crossing, LP*, No. 21-10360 (TMD) (Bankr. W.D. Tex.).

purchase from Princeton the NPA, the notes, and the judgment against WCCG and Great Value for $11,372,698.89.[5] In exchange, Princeton released its claims against Paul's entities, including WCCG and Great Value. The Settlement Agreement stated that Paul's entities were not releasing or waiving any present or future claims they have against Kretzer.

The settling parties moved for the Dallas Bankruptcy Court's approval of the Settlement Agreement. Kretzer opposed the settlement. First, he filed a motion in the Dallas Bankruptcy Case to strike the settling parties' motion for approval. When the bankruptcy court denied that motion, he filed written objections to the Settlement Agreement. The bankruptcy court held an evidentiary hearing to consider approving the settlement, during which Kretzer argued the settlement would harm his interests. The bankruptcy court overruled Kretzer's objections and announced it would approve the Settlement Agreement. Kretzer appealed to the United States District Court for the Northern District of Texas. He sent a letter to the title company that was facilitating payment of the settlement amount to say it could not release the funds due to his appeal of the bankruptcy court's order.

---

[5] Kretzer contends Phoenix was "a paper company without any capitalization." He claims Phoenix was able to pay the $11.37 million purchase price by a plan in which that amount was pulled from a $580 million reserve account established in the Dallas Bankruptcy Case from the bankruptcy sale of certain assets of the bankruptcy debtors. Those funds would then be transferred to another Paul-related entity, World Class Holdings I, LLC, which would loan the money to Phoenix, which would then use the funds to pay Princeton.

Kretzer also filed in the trial court in this case a "Motion for Order of Declaratory Judgment" that the Settlement Agreement was void under Texas law.[6]

Princeton filed an emergency motion in this Court for a temporary stay of the receivership. Princeton argued Kretzer had "far exceeded his authority under Texas law and the trial court's [Receivership Order]," and that he was "taking actions that cause direct harm to Princeton." Princeton argued that, by opposing the Settlement Agreement, "the only party who stands to benefit by prolonging the Receivership is [Kretzer] himself and his outside attorneys, who are apparently attempting to leverage an ultimately greater fee award."

The Dallas Bankruptcy Court ultimately approved the Settlement Agreement. Phoenix paid Princeton $11.37 million under the Settlement Agreement, and therefore Princeton has been paid the full amount owed to it under the trial court's judgment. The Settlement Agreement thus apparently created an unusual situation in which Princeton, the judgment creditor, has received payment of the full amount of the judgment, but the judgment purportedly has not been satisfied and was assigned to Phoenix.

**F.    The trial court's award of receivership fees and denial of the Intervenors' pleas**

In October 2022, about a month after the settling parties executed the Settlement Agreement, the trial court entered an order directing Kretzer to file "an

---

[6]    Kretzer initially filed this as an "original petition" against Princeton.

14

accounting that includes . . . services rendered in aid of collection of the judgment, describing all actions taken, expenses incurred, and property recovered or transferred as Receiver pursuant to the [Receivership Order]." In response, Kretzer filed a report and a motion for approval of his fees.

In his roughly one-hundred-page report, Kretzer explained how Paul operated his network of companies to deceive lenders and creditors, asserted that Kretzer's efforts resulted in the settlement payment to Princeton, and discussed Kretzer's settlement of the CTS and La Zona Cases. The report also included a brief section regarding the amounts Kretzer collected and his expenses. Regarding the sources of the funds he collected, Kretzer's report states, in full: "Receipts came from two sources: (1) litigation settlement agreements with two commercial secured creditors, and (2) claw back of fraudulently transferred funds." The report does not specify which "litigation settlements" it refers to, the funds it clawed back, or whether any court ever held that any of those funds had been fraudulently transferred.

With respect to an "accounting," Kretzer's report states, "[t]o account for all funds, your Receiver opened a dedicated IOLTA for the receivership at Cadence Bank. All receipts and expenses were deposited into and disbursed from this account." The report states that Kretzer's expenses "largely consisted of legal fees to law firms," followed by a list of three named law firms (one of which is

Kretzer's firm) and "two [unnamed] small law firms," as well as various litigation support services, and includes the following table:

| Collections to Receivership Estate | $2,533,700.50 |
|---|---|
| Legal Fees, Culhane Meadows | ($1,047,754.24) |
| Legal Fees, Lipp Law Firm | ($254,588.71) |
| Legal Fees, Kretzer & Volberding | ($762,833.68) |
| Legal Fees, Research law firms | ($17,050.10) |
| Litigation Expenses | ($238,763.25) |
| Net to Receivership Estate In IOLTA | **$212,710.52** |

Thus, Kretzer's claimed expenses were around $2.3 million, over $2 million of which were attorney's fees he incurred in multiple jurisdictions. Beyond the statement quoted above that Kretzer collected funds from "claw backs of fraudulently transferred funds" and "litigation settlements," his report does not provide any information about the source of the roughly $2.5 million he collected for the receivership estate. The report further states that "[g]iven the intensity of Nate Paul Organization opposition, Receivership expenses are relatively low." Apparently, none of the $212,710.52 that remains from what Kretzer collected has been distributed to Princeton.

Kretzer also filed a Motion for Approval of Fees Upon Successful Resolution of Case ("Fee Motion"). In his Fee Motion, Kretzer asked the trial court to approve his fee in the amount of $2,843,174.70, which is twenty-five

16

percent of the amount paid to Princeton under the Settlement Agreement ($11,372,698.89 x 25% = $2,843,174.70). Kretzer argued he was entitled to a fee based on the settlement amount because the settlement was "the culmination of pursuit by your Receiver in several state and federal courts" and came about "because your Receiver challenged [Paul] at every turn."

After Kretzer filed his Fee Motion, WCCG and Great Value filed a "motion to compel" his compliance with the trial court's order directing him to provide an "accounting." They argued Kretzer had seized "over $3 million in cash and over $40 million in real property," but they "are still in the dark as to what property [Kretzer] has seized, and how or why, and where it is now," because Kretzer had never provided an accounting of the assets he seized or any details of their whereabouts (including the terms of the settlement agreements in the CTS and La Zona Cases). Although WCCG and Great Value contacted the trial court by email on three occasions to schedule a hearing on their motion to compel, the record does not reflect that a hearing was ever conducted.

In April 2023, six months after he filed his Fee Motion, Kretzer filed a proposed omnibus order that would award him the $2.8 million in fees he requested, along with other relief such as recovery of "any additional litigation expenses" he incurs in the future related to his fee award (including appeals challenging the fee award) and denial and dismissal of the Intervenors' pleas in

17

intervention. A few days later, WCCG, Great Value, and the Intervenors filed joint objections to Kretzer's proposed order, setting out dozens of separate objections. The trial court did not take any immediate action on Kretzer's proposed omnibus order.

In July 2023, this Court denied WCCG and Great Value's motion for rehearing of our decision affirming the trial court's judgment and Receivership Order. The next day, Kretzer filed a letter with the trial court, informing it that our Court had upheld the Receivership Order and rejected WCCG and Great Value's "challenge to the 25% fee you authorized at the inception of the receivership nearly two years ago." The letter continued, "only one order needs to be completed to bring this cause number to final conclusion—authorize payment of the Receiver's fee pursuant to this Court's Receivership Order," and attached to the letter was Kretzer's proposed omnibus order. Kretzer added, "I respectfully request by submission that the Court approve and enter this order."

The trial court signed and entered Kretzer's proposed omnibus order on August 2, 2023 ("Final Order"), three business days after Kretzer submitted his letter requesting its entry.[7] The trial court did not conduct a hearing on any motion before entering the order, nor does the record reflect that any motion was set for submission.

---

[7] The trial court signed the proposed omnibus order without making any changes to it except to add that our Court denied the motion for rehearing.

18

The Final Order approved Kretzer's report and "conclude[d]" that Kretzer's "diligent efforts and litigation resulted in payment in full to Princeton Capital of $11,372,698.89 and full satisfaction and extinguishment of [the trial court's] March 4, 2021 judgment." In the Final Order, the trial court "f[ound]" that "Kretzer's advocacy, effort and representation were proper, reasonable, and effective under the circumstances of this case," such that "payment of a 25% fee constitutes a reasonable and necessary fee for the Receiver and is consistent with similar awards by other courts for receivers." The Final Order granted Kretzer's motion for award of receivership fees, finding "that Receiver is entitled to Receivership fees equal to 25% of $11,372,698.89, which is the amount of $2,843,174.70 ('Fee Award')." The Final Order also "authorized" Kretzer to "submit this Order to the [bankruptcy court] in [the Dallas Bankruptcy Case] to obtain payment of the Fee Award," asserting that the Dallas Bankruptcy Court holds in reserve sufficient funds to pay the Fee Award.

The Final Order concluded, "ORDERED all pending pleas in intervention, motions, objections, subpoenas, and discovery requests, are hereby denied and dismissed" (footnotes omitted). The Final Order does not explain the basis for these denials and dismissals.

19

WCCG, Great Value, and the Intervenors filed motions for new trial and appealed the Final Order.[8]

## II.     Kretzer's Jurisdictional Challenge

We begin with Kretzer's jurisdictional challenge. In two motions to dismiss that he incorporates into his briefs, Kretzer argues we lack jurisdiction for multiple reasons, including: (1) the supreme court's judgment in the prior appeal of this case renders it moot; (2) the Settlement Agreement and resulting payment from Phoenix to Princeton mooted the issues before us; (3) Kretzer, as an officer and agent of the trial court, is not a "party" to this appeal, such that his actions cannot be challenged here; and (4) the decisions of the Third, Eighth, and Fourteenth Courts of Appeals in the CTS and La Zona Cases deprive us of jurisdiction over this appeal. WCCG, Great Value, and the Intervenors address the jurisdictional issues in their respective briefs.

---

[8]     WCCG, Great Value, and Intervenors have properly appealed the Final Order because "'a trial court's order that resolves a discrete issue in connection with any receivership has the same force and effect as any other final adjudication of a court, and thus, is appealable.'" *Roberts v. Abraham, Watkins, Nichols, Sorrels, Agosto & Friend*, No. 01-19-00622-CV, 2020 WL 7502052, at *3 (Tex. App.— Houston [1st Dist.] Dec. 22, 2020, no pet.) (mem. op.) (quoting *Huston v. Fed. Deposit Ins. Corp.*, 800 S.W.2d 845, 847–48 (Tex. 1990)). In *Roberts*, we determined a fee award that did not dispose of all remaining issues was appealable: "In its July 12 order, the trial court resolved a discrete issue in connection with the receivership, namely, the amount of receiver's fees that Roberts owed as of that date." *Id.* Here, the Final Order resolved the issue of what fees Kretzer was owed as of a certain date, and also resolved the discrete issue of the Intervenors' pleas in intervention against Kretzer.

20

## A.    Standard of review

"Standing is a prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to a court's power to decide a case." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000). "For a plaintiff to have standing, a controversy must exist between the parties at every stage of the legal proceedings, including the appeal." *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001). "If a controversy ceases to exist—the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome—the case becomes moot." *Nehls v. Hartman Newspapers, LP*, 522 S.W.3d 23, 28 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (citation and internal quotation marks omitted). And if a case becomes moot, the court must dismiss it for lack of subject-matter jurisdiction. *Williams*, 52 S.W.3d at 184.

The mootness doctrine thus applies to cases in which a justiciable controversy exists between the parties when the case arose, but the live controversy ceases because of subsequent events. *Matthews v. Kountze Indep. Sch. Dist.*, 484 S.W.3d 416, 418 (Tex. 2016). If a controversy ceases to exist at any time during the pendency of the legal proceedings, even on appeal, the case becomes moot. *Williams*, 52 S.W.3d at 184. An issue becomes moot "when one seeks a judgment on some matter which, when rendered for any reason, cannot have any practical legal effect on a then-existing controversy." *Thomas v. Cook*, 350 S.W.3d 382,

21

390 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *see also O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.").

## B.    The supreme court's judgment

Kretzer first contends we lack jurisdiction over this appeal because the supreme court's judgment renders the appeal moot.[9]  The supreme court entered judgment dismissing WCCG and Great Value's prior appeal of the trial court's judgment and Receivership Order as moot, after being informed of the Settlement Agreement between Phoenix and Princeton.  *See* Judgm't No. 23-0722 (Tex. Mar. 8, 2024).

In relevant part, the judgment states that the supreme court,

> having considered [the record and the parties' briefs], concludes, pursuant to Texas Rules of Appellate Procedure 56.2 and 60.6 that the appeal is moot.  IT IS THEREFORE ORDERED that . . . [w]ithout hearing oral argument or considering the merits, the Court grants the petition for review, dismisses the case as moot, and vacates the judgment and opinion of the court of appeals[.]

---

[9]    Prior to entry of the supreme court's judgment, Kretzer also had argued that our opinion in the prior appeal rendered this case moot.  *See Great Value Storage*, 2023 WL 3010773, at *1.  Kretzer's position now appears to be that those arguments have been subsumed within his mootness arguments based on the supreme court's judgment.

22

The issues involved in the prior appeal were WCCG and Great Value's challenges to the summary judgment against them based on their failure to pay the amounts due under the notes to Princeton, to the severance order, and to the appointment of a receiver and the Receivership Order. *See Great Value*, 2023 WL 3010773, at *1.

While some issues may be moot in light of the supreme court's judgment, that does not mean all issues are necessarily moot. *See Brast v. Brast*, 681 S.W.3d 788, 791 (Tex. App.—Houston [14th Dist.] 2023, no pet.) ("[A] case is not made moot merely because some issues become moot during the appeal."). The issues presented in this appeal are different. Here, WCCG and Great Value are challenging the trial court's fee award in the Final Order. And the Intervenors— who were not parties to the prior appeal—are challenging the trial court's denial of their pleas in intervention and related requests for relief. Neither of these challenges attacks the underlying judgment or the Receivership Order itself; they are challenges to a distinct set of rulings in the Final Order made after the supreme court's dismissal of the prior appeal. These issues could not have been raised in the prior appeal because the Final Order from which this appeal is taken had not been entered at the time the prior appeal was filed.[10]

---

[10] For similar reasons, we reject Kretzer's contention that this appeal is a "collateral attack" on the trial court's judgment and Receivership Order. A collateral attack on a judgment generally refers to a challenge to a judgment in a separate

23

The issues presented here are thus jurisdictionally distinct from the issues raised in the prior appeal and pertain to the trial court's rulings on new receivership issues. *Hill v. Hill*, 460 S.W.3d 751, 763 (Tex. App.—Dallas 2015, pet. denied) ("Texas has long recognized the independent and ongoing nature of receivership proceedings."). The Eighth Court of Appeals likewise reached the same result in concluding that the supreme court judgment did "not directly impact [its] analysis" in the La Zona Case. *See WC 4th and Rio Grande*, 2024 WL 1138568, at *5 n.12 ("Unlike the Harris County receivership appeal [*i.e.*, the prior appeal in this case], the issues in this case do not turn on whether Kretzer was properly appointed or whether the Receivership Order was overly broad."). Therefore, the supreme court judgment did not moot the current challenges to the Final Order's fee award and denial of the pleas in intervention.

## C. The Settlement Agreement

Nor did the Settlement Agreement or resulting settlement payment render this appeal moot. Kretzer claims otherwise because the Settlement Agreement "includes a global release of all claims Princeton may have had against Nate Paul individually, and his collection of corporate entities," such that "there was no

proceeding brought for a different purpose, whereas here, WCCG, Great Value, and the Intervenors directly challenge the trial court's Final Order in the same case in which it was issued. *Parsons v. Parsons*, 648 S.W.3d 354, 357 (Tex. App.—Texarkana 2021, pet. denied) ("A collateral attack is an attempt to avoid the effect of a judgment in a proceeding brought for a different purpose." (citation and internal quotation marks omitted)).

24

justiciable case in controversy pending in the District Court." According to Kretzer, Princeton's receipt of full payment of the judgment amount and its execution of a global release resulted in a situation in which this case no longer has an appellee and, thus, no justiciable controversy. We disagree.

Kretzer's arguments rest on the incorrect premise that the issues involved in this appeal are claims by or against Princeton. But the issues raised by WCCG, Great Value, and the Intervenors involve Kretzer's actions and the trial court's rulings awarding fees to him and dismissing and denying the pleas in intervention. Payments of the amounts due to Princeton do not moot these independent issues.

WCCG and Great Value are not challenging the trial court's underlying judgment or any amounts due to Princeton but are appealing the fee awarded to Kretzer in the Final Order. The Receivership Order states that Kretzer's fees "will be taxed as costs against the Debtor." Hence, WCCG and Great Value remain subject to liability for any fees properly awarded to Kretzer under the terms of the Receivership Order, regardless of any payment to Princeton.[11] *See Klinek v.*

---

[11]     This conclusion is not changed by the fact that the Final Order states, "Sufficient funds to pay [Kretzer's fee] are presently held on reserve under the control of the U.S. Bankruptcy Court [presiding over the Dallas Bankruptcy Case]. The Receiver is authorized to submit this Order to the court in the [Dallas Bankruptcy Case] to obtain payment of the Fee Award." Neither this Court nor the trial court is authorized to compel payment of Kretzer's fee from a reserve held by a bankruptcy court. *See* TEX. CONST. art. V, § 8; *Emp'rs Mut. Cas. Co. v. Coxsey*, 718 S.W.2d 426, 428 (Tex. App.—Fort Worth 1986, no pet.) ("[A] state court lacks authority to enjoin federal court proceedings in in personam proceedings, nor does it have the authority to enjoin the parties in such federal proceedings from

25

*LuxeYard, Inc.*, 672 S.W.3d 830, 841–42 (Tex. App.—Houston [14th Dist.] 2023, no pet.) (receiver's fees "are considered court costs"); *Hartwell v. Fundworks, LLC*, No. 02-23-00100-CV, 2024 WL 46053, at \*9 (Tex. App.—Fort Worth Jan. 4, 2024, pet. denied) (mem. op.) (court costs are recoverable from judgment debtor). The Settlement Agreement thus did not moot WCCG and Great Value's challenges to the fee award in the trial court's Final Order.

Moreover, any release given by or to Princeton under the Settlement Agreement would not affect the claims of the Intervenors. Again, the Intervenors' claims are against Kretzer based on his allegedly improper seizure of their assets, and thus a release by or of Princeton is immaterial. And the Settlement Agreement specifically excludes claims against Kretzer by providing that the Settlement Agreement "does not release or waive . . . any present or future claim, appeal, or litigation by the Great Value Parties [which includes WCCG, Great Value, and the Intervenors] against the Receiver or its agents, attorney, or representatives."

---

pursuing their federal court remedies."). Furthermore, nothing in the Final Order reflects that Kretzer's sole means of satisfying the fee award is via the bankruptcy reserves or that WCCG and Great Value are not responsible for the fee; nothing alters the Receivership Order's requirement that WCCG and Great Value are responsible for the fee. And the Final Order awards Kretzer recovery of any litigation expenses he incurs responding to this appeal, which, again, are WCCG and Great Value's responsibility notwithstanding the Final Order allowing Kretzer to seek such expenses from the bankruptcy reserve.

Thus, WCCG and Great Value presently remain liable for payment of any fee and expenses properly awarded to Kretzer, notwithstanding the presence of a reserve fund in the bankruptcy court that may (or may not) be used to pay for such items.

We conclude the Settlement Agreement does not moot the issues raised in this appeal.

**D.    Kretzer as a "party" to this appeal**

Kretzer also contends this appeal is moot because he is not a "party" to this litigation, a corollary to his argument that the Settlement Agreement mooted this case. Kretzer contends the settlement payment to Princeton resulted in Princeton no longer being involved in this appeal, leaving WCCG, Great Value, and the Intervenors without an adversary.

Kretzer relies on caselaw observing that receivers are "officers" and "agents" of the trial court that appointed them. *See, e.g.*, *Forex Cap. Mkts. v. Crawford*, No. 05-14-00341, 2014 WL 7498051, at *2 n.4 (Tex. App.—Dallas Dec. 31, 2014, pet. denied) (mem. op.) ("[A] receiver is an officer of the court, not a representative of the parties."). From there, Kretzer concludes that as an officer and agent of the trial court, he cannot be made a "party" to this appeal. And because he cannot be made a party, he cannot fill the role of adversary to WCCG, Great Value, or the Intervenors, meaning they have no justiciable interest in this case. Again, we disagree.

WCCG, Great Value, and the Intervenors challenge the relief afforded to Kretzer in the Final Order, and "orders pertaining to a receivership which award fees such as attorney's fees are appealable." *Chase Manhattan Bank v. Bowles*, 52

S.W.3d 871, 878 (Tex. App.—Waco 2001, no pet.) (citing *Wittner v. Scanlan*, 959 S.W.2d 640, 642 (Tex. App.—Houston [1st Dist.] 1995, writ denied)). Because such orders are appealable, receivers necessarily must be able to "defend their interests on appeal." *Moore ex rel. Moore v. Tangipahoa Parish Sch. Bd.*, 912 F.3d 247, 250 (5th Cir. 2018) (concerning "special masters and other agents of the court"). And "for this purpose" of defending his interests on appeal, a receiver "occupies the position of a party to the suit," even though he is "an officer of the court." *Id.*; *see also Wiley v. Sclafani*, 943 S.W.2d 107, 110 (Tex. App.—Houston [1st Dist.] 1997, no writ) (concluding that, while receiver had no standing to appeal in the place of the parties regarding the summary judgment and vacatur of the receivership, he did have standing to appeal the amount of receivership fees awarded). Indeed, in *Roberts* as here, Kretzer acted as a party to the appeal by moving to dismiss the appeal for lack of jurisdiction. *See Roberts*, 2020 WL 7502052, at *3–4.

If we were to accept Kretzer's contention that his actions cannot be challenged on appeal because he is an officer and agent of the trial court, we effectively would be holding a receiver's actions unreviewable on appeal—that a receiver has unfettered authority, so long as the trial court approves his actions. Any such holding is contradicted by the rule that "orders pertaining to a receivership . . . are appealable." *Bowles*, 52 S.W.3d at 878. And while Kretzer

28

relies on the doctrine of derived judicial immunity—the idea that "judicial immunity applies to officers of the court who are integral parts of the judicial process, such as . . . court-appointed receivers"[12]—as protecting him from the Intervenors' claims, that may be an issue for the trial court to consider but is not a reason we lack jurisdiction over the present appeal. Therefore, Kretzer's contention that his status as an agent of the trial court deprives us of jurisdiction fails.

## E. The CTS and La Zona Cases

Kretzer next claims the appeals of the CTS and La Zona Cases in the Third, Eighth, and Fourteenth Courts of Appeals deprive us of jurisdiction over this appeal. Those cases involved the Property Intervenors, not the Bank Account Intervenors. And even for the Property Intervenors, whether those cases support the defenses of issue preclusion or res judicata are issues to be pled and proven by Kretzer, not jurisdictional bars to this appeal. *Morris v. Coffman*, No. 01-09-00493-CV, 2012 WL 5381207, at *2 (Tex. App.—Houston [1st Dist.] Nov. 1, 2012, no pet.) (mem. op.) ("A prior judgment entitled to full faith and credit may raise other problems with maintaining the suit—for example, res judicata. Res

---

[12] *Turner v. Pruitt*, 342 S.W.2d 422, 423 (Tex. 1961). The Intervenors respond that Kretzer acted *ultra vires*, outside the authority granted to him by the Receivership Order, meaning derived judicial immunity does not apply. *See Clements v. Barnes*, 834 S.W.2d 45, 46 (Tex. 1992) (derived judicial immunity does not apply to actions "outside the scope" of delegated authority). Because of our disposition of the appeal, we do not address this issue.

judicata, however, is not a jurisdictional bar."); *see also Town Park Ctr., LLC v. City of Sealy*, 639 S.W.3d 170, 182 (Tex. App.—Houston [1st Dist.] 2021, no pet.) ("[A] plea of res judicata is not a plea in abatement or a plea to the jurisdiction, but is a plea in bar. . . . An affirmative defense like res judicata should be raised through a motion for summary judgment or proven at trial." (internal quotation marks omitted). Therefore, neither the CTS Case nor the La Zona Case deprives us of jurisdiction over this appeal.

Accordingly, we conclude we have jurisdiction to consider this appeal.

## III. WCCG and Great Value's Appeal

WCCG and Great Value contend the trial court reversibly erred by awarding Kretzer a fee of around $2.84 million. In their first issue, they contend the trial court abused its discretion by awarding this fee without first conducting an analysis of its reasonableness. In their second issue, WCCG and Great Value argue the trial court abused its discretion in determining the amount of Kretzer's fee in a manner that contravenes the Receivership Order's fee provision.

## A. Standard of review

"We review a trial court's fee award to a receiver for abuse of discretion, considering all the material facts and circumstances." *Roberts*, 2020 WL 7502052, at *5. A trial court abuses its discretion when it acts in an unreasonable or

arbitrary manner, and without reference to any guiding rules or principles. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991).

## B.     Fee award in contravention of Receivership Order's fee provision

The Receivership Order's fee provision states:

> The Receiver's fee is twenty-five percent (25%) of all gross proceeds coming into his possession, not to exceed twenty-five percent of the balance due on the judgment, plus any out-of-pocket expenses incurred by the Receiver in his scope as a receiver in this case.

Focusing on the "coming into his possession" language, WCCG and Great Value argue the Final Order's fee award fails to follow this formula because the fee is based on monies that never came into Kretzer's possession.

The Final Order awards Kretzer a fee of $2,843,174.70, which is twenty-five percent of $11,372,698.89, the amount paid by Phoenix to Princeton under the Settlement Agreement. The Settlement Agreement was negotiated and effected by Princeton and the Adversary Defendants independently of Kretzer, at their own cost.[13] Kretzer strenuously opposed the settlement, to the point that Princeton, on whose behalf he had been appointed to work, requested a stay of the receivership. After the settlement was approved over Kretzer's objection, it was funded but none of the settlement amount came into Kretzer's possession. Even in his report,

---

[13]     Princeton previously informed this Court that Kretzer "was invited to be a part of global settlement discussions, to address any concerns about the availability of his fee, but steadfastly refused to participate."

31

Kretzer informed the trial court that he had "collect[ed]" approximately $2.5 million, not the $11.37 million paid to Princeton by Phoenix. Even if these reported collections were proper, the trial court did not use them as the basis for its fee award. The trial court abused its discretion by failing to act according to guiding principles because the fees awarded on the settlement amount which did not come into Kretzer's possession were not authorized under the Receivership Order. *Beaumont Bank*, 806 S.W.2d at 226.

Kretzer nonetheless claims he is entitled to a fee based on the settlement payment because: (1) the pressure he put on Paul and various Paul-related entities is ultimately what motivated Paul to make the settlement payment; (2) he worked diligently, and spent a great deal of effort, to collect funds from various Paul-related entities; and (3) Princeton benefitted from the settlement payment, including a substantial increase in its stock price. But even assuming these things are true, none of them authorizes a fee under the Receivership Order's fee provision.

This conclusion is not changed by our decision in *Roberts*. There, a law firm sued its former lawyer and obtained a judgment against him. *Roberts*, 2020 WL 7502052, at *1. The lawyer failed to pay the judgment, "despite having assets that would have satisfied the judgment debt." *Id*. The trial court appointed a receiver to collect the judgment, setting the receiver's fee at twenty-five percent

"of all gross proceeds that came into the receiver's possession." *Id.* Within two months of the receiver's appointment, the lawyer paid the judgment with interest directly to his former firm. *Id.* at *2. The firm apparently then "turned the money over to the receiver." *Id.* at *2 n.2. The trial court awarded the receiver a fee in an amount equal to twenty-five percent of the amount the lawyer paid to his firm— which was subsequently turned over to the receiver—and we affirmed. *Id.* at *2, 6.

We held "the trial court awarded the receiver fees in accordance with the terms set out in the unchallenged . . . order appointing the receiver." *Id.* at *5. That is, the trial court did what the receivership order required when awarding the receiver his fee. *Id.* The lawyer did not argue on appeal that Kretzer was not entitled to a fee because the lawyer directly paid his former firm. *See id.* at *1–6.

This case presents a different situation because the trial court's Final Order awards Kretzer a fee based on a settlement amount that never came into his possession, and WCCG and Great Value raise this lack of possession as a reason to set aside the Fee Award. Accordingly, *Roberts* is distinguishable.[14]

---

[14]    After oral argument, Kretzer filed a supplemental brief in which he relies on *Roberts* to argue the settlement payment not coming into his possession is immaterial. According to Kretzer, *Roberts* affirmed the fee award because the funds "necessarily belonged to the *custodia legis* receivership estate" and "for over a hundred years, Texas receivership doctrine has been anchored in the foundation of 'constructive custody' and 'constructive control,' known as *custodia legis*." Assuming we can properly consider these arguments, we conclude they are unpersuasive. While a court can assume constructive possession of a receivership estate and while the Receivership Order authorized Kretzer to "take possession of and sell all leviable property of Judgment Debtors" which "shall be held in

33

Nor is our conclusion changed by Kretzer's argument that WCCG and Great Value "judicially admitted" he is entitled to a fee equal to twenty-five percent of the settlement amount. Kretzer bases this argument on a statement by bankruptcy counsel for the Adversary Defendants at a hearing in the Dallas Bankruptcy Case. There, counsel told the bankruptcy court "[t]he receiver's fee is 25 percent of what's recovered. What will be recovered is $11.3 million." According to Kretzer, this statement constitutes a judicial admission of the amount of his fee, by which WCCG and Great Value are bound. We disagree.

The quoted statement was not a judicial admission. "Judicial admissions result when a party makes a statement of fact which conclusively disproves a right of recovery or defense he currently asserts." *Ledesma v. City of Houston*, 623 S.W.3d 840, 846 (Tex. App.—Houston [1st Dist.] 2020, pet. denied) (citation and internal quotation marks omitted). To qualify as a judicial admission, a statement must be "deliberate, clear, and unequivocal." *Id.* Counsel's statement was none of

*custodia legis* of said Receiver," the funds used to pay the settlement amount were not property of "the Judgment Debtors." As Kretzer admits, those funds were taken from the reserve established by the Dallas Bankruptcy Court from the sale of certain assets owned by the Reorganized Debtors involved in the Dallas Bankruptcy Case (none of which was WCCG or Great Value). The funds were loaned to Phoenix, which then used them to pay Princeton. Because the funds were not owned by or in the possession of WCCG or Great Value, they never became in the "constructive custody" of the trial court.

Additionally, the fee-provision statement "gross proceeds coming into his possession" cannot refer to assets Kretzer held constructively via *custodia legis*, otherwise he would automatically be entitled to a 25% fee on all of WCCG and Great Value's assets at the inception of the receivership.

34

these things. Counsel was not intentionally making a statement regarding the amount of the fee owed such that it conclusively negated WCCG and Great Value's rights to challenge the fee amount. Instead, she was describing for the bankruptcy court what the next steps are in the Texas lawsuit regarding determination of Kretzer's fee. That counsel was not making a judicial admission is established by her telling the bankruptcy court the amount "the receiver is entitled to recover" was not known but would "be determined by" the state court. Also, the settlement term sheet and declaration of World Class Holdings I, LLC's representative express "if any" when discussing the future determination of amount owed to Kretzer, further indicating there was no intent to admit or stipulate to a specific amount owed. Thus, when considered in context, counsel's statement was not a "deliberate, clear, and unequivocal" statement necessary for a judicial admission of Kretzer's fee. *Id*.

We sustain WCCG and Great Value's second issue and reverse that portion of the order awarding Kretzer the $2,843,174.70 fee.[15] WCCG and Great Value request that the entire Final Order be vacated as to them, which, in addition to the reversed fee, also includes rulings that Kretzer's expenses as of the date of the order were "approved as reasonable and necessary" and that he is entitled to

---

[15] Because our disposition of their second issue is dispositive of the trial court's fee award, we do not consider WCCG and Great Value's first issue, regarding the lack of a reasonableness analysis of Kretzer's fee. *See* TEX. R. APP. P. 47.1.

35

recover additional future expenses he incurs for, among other things, seeking payment of his fee and defending this appeal. Although the Final Order does not reflect a specific amount of expenses, as discussed above, Kretzer stated in his report that his expenses were around $2.3 million, over $2 million of which was attorney's fees he incurred in multiple jurisdictions. Because it appears that at least some of Kretzer's reasonable and necessary expenses pertain to legal fees he incurred in multiple jurisdictions seeking a fee based on the settlement amount, we also reverse those portions of the Final Order approving and awarding Kretzer's expenses as of the date of the order and his future expenses, remanding these issues to the trial court for further proceedings. *See* TEX. R. APP. P. 43.2(d); *Barker v. Eckman,* 213 S.W.3d 306, 314–15 (Tex. 2006) (holding appellate court should reverse and remand issue of attorney's fees when determination on appeal could affect the determination of reasonable and necessary attorney's fees); *Armour Pipe Line Co. v. Sandel Energy, Inc.*, 672 S.W.3d 505, 531 (Tex. App.—Houston [14th Dist.] 2023, pet. denied) (concluding court of appeals' disposition of appeal substantially affected portion of judgment awarding attorney's fees under Declaratory Judgments Act and, thus, reversing that portion of the judgment and remanding for further proceedings).[16]

---

[16] Per his report, Kretzer paid the $2.3 million in expenses with disbursements from the approximately $2.5 million he collected stemming from two sources: "(1) litigation settlement agreements with two commercial secured creditors, and

## IV. The Intervenors' Appeal

In their first and second issues, the Intervenors claim the trial court abused its discretion and denied them due process when it dismissed and denied their pleas and other requests for relief.

## A. Intervention

"A party with a justiciable interest may intervene in a pending suit as a matter of right." *Memon v. Nguyen*, No. 01-21-00706-CV, 2023 WL 3513135, at *4 (Tex. App.—Houston [1st Dist.] May 18, 2023, no pet.) (mem. op.) (citing *Nghiem v. Sajib*, 567 S.W.3d 718, 721 (Tex. 2019)); *see also* TEX. R. CIV. P. 60. Third parties are generally allowed to intervene in post-judgment proceedings when their property interests are at stake. *See M&E Endeavours LLC v. Air Voice Wireless LLC*, No. 01-18-00852-CV, 2020 WL 5047902, at *8 (Tex. App.—Houston [1st Dist.] Aug. 27, 2020, no pet.) (mem. op.) ("'Intervention is a recognized option for a non-party seeking to protect its interest in property that is the subject of a turnover motion' or order." (quoting *Mitchell v. Turbine Res. Unlimited, Inc.*, 523 S.W.3d 189, 200 (Tex. App.—Houston [14th Dist.] 2017, pet. denied)); *see also Breazeale v. Casteel*, 4 S.W.3d 434, 437 (Tex. App.—Austin 1999, pet. denied) ("We hold that intervention is not necessarily barred after the trial court has rendered final judgment where the intervenor does not attack the

---

(2) claw back of fraudulently transferred funds." We take no position regarding these collections or disbursements.

37

substance of the judgment itself, but merely seeks to protect his interest in property that is the subject of a turnover motion."). We review a trial court's denial of intervention for an abuse of discretion. *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657–58 (Tex. 1990).

## B.    The Texas Turnover Statute

Here, the trial court entered the Receivership Order under the Texas Turnover Statute. *See* TEX. CIV. PRAC. & REM. CODE § 31.002. The turnover statute is a "procedural device" given to judgment creditors to "assist them in satisfying their debts," by seeking "court assistance in reaching a judgment debtor's property that is otherwise difficult to attach or levy on by ordinary legal process." *Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co.*, 540 S.W.3d 577, 581 (Tex. 2018) (per curiam) (citation and internal quotation marks omitted). The statute gives courts the authority to "order the judgment debtor to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control." TEX. CIV. PRAC. & REM. CODE § 31.002(b)(1). It also allows them to "appoint a receiver with the authority to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment." *Id.* § 31.002(b)(3).

The turnover statute does not allow courts to give receivers unfettered authority to collect the amounts due under a judgment; it is subject to several

limitations.  The statute's grant of authority to allow for a receiver to seize property "in the debtor's possession or subject to the debtor's control" means property owned by the judgment debtor.  *Benavides v. White*, No. 05-21-01148-CV, 2023 WL 415962, at *4 (Tex. App.—Dallas Jan. 26, 2023, no pet.) (mem. op.) ("[A] court may order turnover of non-exempt property that is in the debtor's possession or subject to the debtor's control only when the judgment debtor owns (has title to) the property in the first place.").  And the turnover statute does not apply to non-judgment debtors.  *Beaumont Bank*, 806 S.W.2d at 227 ("Texas courts do not apply the turnover statute to non-judgment debtors.").  In other words, it does not allow courts to empower receivers to seize property owned by third parties rather than by the judgment debtor.  *Detox Indus., Inc. v. Gullett*, 770 S.W.2d 954, 956 (Tex. App.—Houston [1st Dist.] 1989, no writ) (no turnover action against non-debtor corporation to cancel stock in judgment debtor's name and reissue in creditor's name).

## C.    The Intervenors have a justiciable interest

The Intervenors are third parties.  None of them was named as a defendant in this lawsuit or as a judgment debtor in the trial court's judgment against WCCG and Great Value.  While the Intervenors are all *affiliates* of WCCG and Great Value, each of them presumably is a distinct corporate entity from the judgment debtors.  *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 173 (Tex.

2007) ("Texas law presumes that two separate corporations are distinct entities."); *Brand v. Sojitz Corp. of Am.*, No. 01-22-00477-CV, 2023 WL 4110855, at \*7 (Tex. App.—Houston [1st Dist.] June 22, 2023, no pet.) (mem. op.) ("[B]ecause Texas law presumes that even related corporations are separate entities, '[t]he party seeking to ascribe one corporation's actions to another by disregarding their distinct corporate entities must prove this allegation.'" (quoting *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 798 (Tex. 2002))).

Kretzer contends the Intervenors lack a justiciable interest in this suit based on his characterization of their pleas as a challenge to his fee. But the Intervenors assert in their live pleas that, in violation of Texas law, Kretzer seized and disposed of the Intervenors' assets, which was illegal because they remained third parties to both the proceedings below and the judgment. They claim he transferred ownership of real property owned by the Property Intervenors and assumed control of and settled offensive litigation on their behalf. And they claim he seized hundreds of thousands of dollars from accounts owned by the Bank Account Intervenors. Among other things, the Intervenors seek declarations that portions of the Receivership Order that exceeded Texas law regarding their rights are void, and that Kretzer's actions affecting their property rights are void and violated the law.

We conclude the Intervenors have alleged facts demonstrating that they are seeking to protect their interest in property that is the subject of a turnover order and that they have a justiciable interest in this post-judgment proceeding. *See M&E Endeavours LLC*, 2020 WL 5047902, at \*8; *cf. also Bizkeeping Corp. v. Benton*, 714 S.W.3d 857, 863 (Tex. App.—Houston [1st Dist.] 2025, no pet.) ("[T]he non-parties' ownership claim suffices to confer standing. They claim that the receiver is attempting to sell property that belongs to them, rather than to a judgment debtor. This claimed interest gives them standing.").

## D. The trial court's denial and dismissal of the Intervenors' pleas

The Intervenors filed their pleas in intervention to protect their property interests against Kretzer's allegedly wrongful seizure and disposition of their assets. *See* TEX. R. CIV. P. 60. If Kretzer wanted to challenge the interventions, he had a burden to file a motion to strike the pleas. *See Horseshoe Operating Co.*, 793 S.W.2d at 657 ("An intervenor is not required to secure the court's permission to intervene; the party who opposed the intervention has the burden to challenge it by a motion to strike.").

Kretzer filed a motion to strike the Intervenors' earlier pleas, but not their live pleas pending at the time of the trial court's dismissal and denial.[17] The

---

[17] Kretzer contends the trial court properly dismissed the Intervenors' pleas because they did not serve him with process. But even if formal service of process had been required, Kretzer waived it when he made a general appearance by

41

motion to strike was not set for a hearing or submission, and Intervenors never filed a response to the motion. Instead, on July 28, 2023, Kretzer filed a letter stating that this Court had denied WCCG and Great Value's motion for rehearing and asking that the trial court sign a proposed omnibus order. The roughly four-page proposed omnibus order pertained almost entirely to Kretzer's award for fees and expenses, but toward the end, included a single sentence that "denied and dismissed" "all pending pleas in intervention, motions, objections, subpoenas, and discovery requests," with footnotes setting forth the pleas, subpoenas, and discovery requests. The trial court signed the proposed omnibus order a few days later, on August 2, 2023.[18]

We hold the trial court abused its discretion, and violated the Intervenors' due-process rights, by summarily denying and dismissing their pleas in intervention without any pending motion on which the denial and dismissal were

---

requesting affirmative relief from the trial court in, among other filings, his motion to strike the Intervenors' earlier pleas. *See In re N.F.*, No. 09-19-00435-CV, 2020 WL 2070286, at *16 (Tex. App.—Beaumont Apr. 30, 2020, pet. denied) (mem. op.).

[18] Kretzer had previously filed on April 28, 2023, this proposed omnibus order, along with a proposed order with the style of another case granting a motion to dismiss under Texas Rule of Civil Procedure 91a and the Texas Citizens Participation Act. On May 1, 2023, the Intervenors filed an objection to these proposed orders, making dozens of objections regarding the proposed order with the style of another case, and objecting that the sentence in the proposed omnibus order that summarily denied their pleas violated their due-process rights and Texas law because it was not based on any pending motion. The trial court never signed the proposed order with the style of another case.

42

based and without notice or a setting. *See Horseshoe Operating Co.*, 793 S.W.2d at 657 ("Without a motion to strike, the trial court abused its discretion in striking Petrolife's plea in intervention."); *see also B. Gregg Price, P.C. v. Series 1 - Virage Master LP*, 661 S.W.3d 419, 425 (Tex. 2023) ("Price and his law firm were denied due process when the trial court proceeded with a canceled hearing without renewed notice to the parties."); *Wood v. Walker*, 279 S.W.3d 705, 709 (Tex. App.—Amarillo 2007, no pet.) (holding trial court violated procedural due process by dismissing party's claims when opposing party had not filed any dispositive motion). "When parties are not afforded a meaningful opportunity to be heard, 'the remedy for a denial of due process is due process.'" *B. Gregg Price, P.C.*, 661 S.W.3d at 423 (quoting *Univ. of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 933 (Tex. 1995)).

Accordingly, we sustain the Intervenors' first and second issues.[19]

---

[19] Because of our disposition, we do not consider the merits of Kretzer's arguments for why the pleas in interventions should be struck, or the merits of the Intervenors' claims, subpoenas, and discovery requests. However, in light of our reversal of the denial and dismissal of the pleas in intervention, we also reverse the denial and dismissal of the subpoenas and discovery requests, which pertain to the relief sought in those pleas, and remand for further proceedings. *See* TEX. R. APP. P. 43.2(d).

## V. Conclusion

We conclude Kretzer is not entitled to any fee under the Receivership Order regarding the $11,372,698.89 settlement amount, reverse the Final Order, and remand for further proceedings consistent with this opinion.

Andrew Johnson
Justice

Panel consists of Chief Justice Adams and Justices Guiney and Johnson.